# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Deontray Vershon Tate,

        Petitioner,

v.

Jeff Titus, Warden,
Rush City Correctional Facility,

        Respondent.

Civ. No. 17-4594 (JNE/BRT)

**REPORT AND RECOMMENDATION**

Zachary A. Longsdorf, Esq., Longsdorf Law Firm, PLC, counsel for Petitioner.

Brittany D. Lawonn, Esq., Assistant County Attorney, Hennepin County Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

In 2014, Petitioner Deontray Vershon Tate was convicted of two counts of first-degree assault and sentenced to 309 months imprisonment. (*See* Doc. No. 1, Habeas Pet.) Tate petitions for relief from this sentence under 28 U.S.C. § 2254. (*See id.*) For the reasons stated below, this Court recommends that the § 2254 petition be denied.

**I.      Background**

Petitioner Tate was convicted of shooting Darnell Reed in his back and thigh, and also shooting a four-year-old child, known as J.B., in his right leg. *See State v. Tate*, No. A14–1339, 2016 WL 952444, at *1 (Minn. Ct. App. Mar. 14, 2016). The shooting occurred during the evening of June 25, 2013, at a residence at the intersection of 36th

Street and Penn Avenue in Minneapolis. *Id.* J.B. is the son of Annie Davis, to whom Mr. Reed was engaged with at the time. (Doc. No. 14, Resp't's App. 530, 541.)

Petitioner was charged with two counts of first-degree assault and one count of second-degree assault. *Tate*, 2016 WL 952444, at *2. The jury found him guilty of the first-degree offenses, and acquitted him of the second-degree charge. *Id.* The jury specifically found that J.B. was four years old and was in the back seat of the vehicle with the doors closed when the shooting occurred. *Id.* The jury also found that Petitioner shot Reed in the presence of children. *Id.* Thus, Petitioner's 309-month sentence included a double upward departure for the assault on J.B. based on victim vulnerability, and a consecutive sentence for the assault on Reed. *Id.*

Petitioner appealed and moved for a stay so he could pursue postconviction remedies in the trial court. *Tate*, 2016 WL 952444, at *2. Petitioner's primary defense was that he was not the shooter, and he sought to present evidence that Davis and Reed had committed a prior armed home invasion to show they had enemies who could have committed the crime. *Id.* at *3. In his postconviction motion, Petitioner argued that he was denied his right to present a complete defense because the district court excluded evidence that Davis and Reed had participated in an armed home invasion four days before the shooting. *Id.* at *2. According to Petitioner, the victims of the home invasion and their acquaintances fit the general description of the person who shot Reed and J.B. *Id.* In the alternative, Petitioner argued that he received ineffective assistance of counsel because this evidence was not properly introduced in the district court. *Id.* The trial court rejected these arguments, Petitioner proceeded with his appeal, and the Minnesota Court

of Appeals affirmed. *Id.* The court found that (1) the exclusion of evidence regarding Davis and Reed's participation in a home invasion did not deny Petitioner the right to present a complete defense; (2) sufficient evidence supports Petitioner's convictions; (3) the admission of testimony by a doctor that a gunshot wound is a serious injury was not plain error; (4) the prosecutor did not commit misconduct by stating that Davis and Reed were "from a different world"; and (5) the district court did not abuse its discretion by imposing an upward departure and consecutive sentences. *Id.* at *2–7. The Minnesota Supreme Court denied a petition review, and the United States Supreme Court denied a petition for certiorari on October 11, 2016. (Habeas Pet. 3.) This action was filed just under a year later, on October 10, 2017. (*See id.*)

**II.    Analysis**

    **A.    Standard of Review Under AEDPA**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than

[the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, the writ can be granted "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

4

### B.   The State Court's Ruling Was Not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law

Petitioner seeks habeas relief on the following grounds: (1) his due process right to present a complete defense was violated when he was precluded from presenting evidence that Anne Davis and Darnell Reed were involved in a violent armed home invasion four days prior to the shooting; (2) his trial counsel was ineffective for failing to make a complete offer of proof regarding the Davis and Reed violent armed home invasion; (3) his conviction for assaulting J.B. violated due process because there was insufficient evidence to satisfy all elements of that crime; and (4) the prosecutor violated due process by suggesting during closing argument that Davis and Reed were from a "different world." (Habeas Pet. 4–12; *see also* Resp't's App. 800–03, 835.) Respondent argues that the state court's adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law. (*See* Doc. No. 13, Resp't's Mem.)

### 1.   Right to Present a Complete Defense

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Under the Confrontation Clause, the right to present a complete defense includes "the opportunity for effective cross-examination of witnesses against him, including inquiry into the witnesses' motivation and bias." *United*

*States v. Triplett*, 104 F.3d 1074, 1079 (8th Cir. 1987). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited in engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). This right is not unlimited, however, and a defendant is guaranteed only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

Violations of this right are subject to a harmless error analysis. *See Crane*, 476 U.S. at 691 (citing *Van Arsdall*, 475 U.S. at 684); *United States v. Stanford*, 823 F.3d 814, 836 (5th Cir. 2016). Petitioner must show that the alleged error was prejudicial, meaning that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Yang v. Roy*, 743 F.3d 622, 626 (8th Cir. 2014) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (holding that federal courts in § 2254 proceedings must "assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and

6

injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*], 386 U.S. 18 (1967)"). Under *Fry*, courts "are not required to conduct a formal application of both the [AEDPA] and *Brecht* because the *Brecht* analysis 'obviously subsumes the [AEDPA test].'" *Toua Hong Chang v. Minnesota*, 521 F.3d 828, 832 (8th Cir. 2008) (quoting *Fry*, 551 U.S. at 120).

A "substantial and injurious effect" occurs when the court finds itself in "grave doubt" about the effect of the error on the jury's verdict. *Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists where the issue of harmlessness is "so evenly balanced that the court feels itself in virtual equipoise as to the harmlessness of the error." *Id.* Courts analyze the following factors to determine prejudice under this standard: (1) the overall strength of the prosecution's case; (2) the importance of the witness's testimony; (3) whether the testimony was cumulative; (4) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and (5) the extent of cross-examination otherwise permitted. *Yang*, 743 F.3d at 628–29 (quoting *Van Arsdall*, 475 U.S. at 684); *see also Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) ("In determining whether a Confrontation Clause violation is harmless under *Brecht*, this Court has repeatedly referred to the factors laid out in [*Van Arsdall*].").

As noted above, Petitioner's primary defense was that he was not the shooter, and he sought to present evidence that Davis and Reed had committed a prior armed home

7

invasion to show they had enemies who could have committed the crime. *Tate*, 2016 WL 952444, at *3. The Minnesota Court of Appeals upheld the exclusion of this evidence because it did not meet the standard under Minnesota law for the introduction of "alternative perpetrator" evidence. *See id.* at *2 (explaining that "[a]lternative perpetrator evidence is admissible only if the defendant makes a threshold showing that the evidence the defendant seeks to admit has an inherent tendency to connect the alternative perpetrator to the commission of the charged crime") (quoting *State v. Ferguson*, 804 N.W.2d 586, 591 (Minn. 2011)). Petitioner conceded he did not make this threshold showing, but argued that the evidence should have been admitted in any event to challenge the adequacy of the police investigation. *Id.* at *3 ("Tate concedes that the evidence was not sufficient to meet the alternative-perpetrator threshold, but argues that he should have been allowed to present it to challenge the adequacy of the police investigation."). The court rejected this argument, reasoning that Petitioner "sought to offer alternative-perpetrator evidence under the guise of challenging law enforcement's investigation into alternative suspects," and "there was not sufficient evidence to connect the other people to the shooting." *Id.* The court also noted the district court's ruling that the prior home invasion evidence could be referenced if used to impeach Davis's intrinsic testimony, or "under 608(b) as a prior act of dishonesty." *Id.* Moreover, Sgt. Voss "was allowed to generally testify about events that occurred before the shooting, which showed [Davis] had potential enemies even though she had previously told Sgt. Voss that she was not 'beefing' with anyone. On this record, we discern no abuse of discretion or resulting prejudice." *Id.*

Petitioner argues that even if he was unable to meet the standard to present evidence and testimony regarding the violent armed home invasion as alternate perpetrator evidence, he still should have been allowed to question Davis, Reed, and Sgt. Voss about that incident in an effort to show that the investigation leading to his arrest was incomplete because it was actively thwarted by Davis. (Doc. No. 16, Pet'r's Resp. Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Mem.") 17.) Petitioner complains that "all that defense counsel was able to elicit was that Davis had initially lied about not having any enemies or people that were mad at her, and that she had 'earlier incidents' and 'other incidents' with people." (*Id.* at 20 (citing the trial transcript).) These "vague generalizations," according to Petitioner, are a "far cry" from the jury learning that Davis "failed to mention her involvement in a violent armed home invasion when asked to provide information that might lead to the arrest and conviction of her son's shooter." (*Id.*) Petitioner argues, "[i]magine how much more powerful" his argument would have been if "he had been able to question Davis and Investigator Voss about this misdirection, and about an incident occurring just four (4) days before her son was shot." (*Id.* at 22.)

In support, Petitioner cites *Alvarez v. Ercole*, 763 F.3d 223 (2d Cir. 2014). The petitioner in *Alvarez* was convicted of one count of manslaughter and two counts of assault. *See id.* at 225, 228. His defense strategy was to show that the police investigation had been incomplete in ways that created reasonable doubt about his guilt. *Id.* at 225. To support this argument, Alvarez sought to cross-examine the lead detective to show that the police had not investigated leads provided by a witness, Edwin Vasquez, whose tips

9

were memorialized in a detective's notes and an investigative DD5 report. *Id.* The trial court did not allow this line of questioning on the grounds that it was impermissible hearsay and also that there was no "clear link" between evidence implicating a culpable third party and the defendant's charged crime. *Id.* at 228. On habeas review, the Second Circuit found that both of these rulings were erroneous under "standard rules of evidence concerning admissibility," *id.* at 231, and the "combined effect" of these rulings "entirely precluded Alvarez from fleshing out his main defense theory: that the police investigation into the murder was flawed and had improperly disregarded a promising alternate suspect." *Id.* at 232. This "total exclusion of inquiry into the Vasquez DD5 was an 'unreasonable application' of clearly established Sixth Amendment law." *Id.* Moreover, the error was not harmless because the "testimony tending to discredit the NYPD investigation would not have been cumulative; indeed, it would have been Alvarez's only such evidence." *Id.* at 233. Thus, the court affirmed the grant of habeas relief. *Id.* at 234.

Unlike in *Alvarez*, Petitioner was not "entirely precluded" from pursuing his theory that the police investigation was flawed. Petitioner was allowed to elicit testimony from Sgt. Voss that Davis initially lied about not having any enemies or people that were mad at her,[1] and that she had "earlier incidents" or "other incidents" with certain people.[2]

---

[1]   Q.   And I believe you asked Ms. Davis if she had any enemies or people that would be mad at her, mad enough to go ahead and do this, correct? To shoot her child, correct?

   A.   I did. Yes.

   Q.   And her response was, no. I am not beefing with anybody, correct?
(Footnote Continued on Next Page)

---

(Footnote Continued from Previous Page)

      A.      That's what she said, yes.

      Q.      But according to your investigation, that was not true, correct?

      A.      That's correct. She amended that.

      Q.      And she amended that after you had documentation of these other events that she was aware of that; that's true, isn't it?

      A.      Yes.

(Resp't's App. 707.)

[2]       Q.      But before you showed her that photograph of Mr. Tate as well as two other suspects from other incidents, she made no mention of Mr. Tate, correct?

      A.      Not by name, correct.

      Q.      And you had numerous times before this and on this day asked her if there were any people that were mad enough or any altercations that could lead to someone shooting her child, correct?

      A.      At least the one for sure.

. . .

      Q.      Well, I believe the photos that you showed her were from people that were involved in incidents a little more recent than 6 months, correct?

      A.      Well, I'm trying to qualify by saying, I was looking at incidents up to and in photographs if they were more recent within that month or so, that's approximate.

      Q.      But isn't it true that some of those incidents were within about a week or 10 days?

      A.      Certainly one or two were, yes.

(Resp't's App. 716–17.)

11

Petitioner asserts that his argument would have been more powerful if he had been allowed an unfettered opportunity to question Davis and Sgt. Voss about the prior home invasion, but the right to present a complete defense only includes "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer*, 474 U.S. at 20 (emphasis in original). Therefore, the state court's resolution of Petitioner's complete defense claim was a reasonable application of federal law.

Furthermore, even if the trial court erred, the error was harmless under *Brecht*. The prosecution's case against Petitioner was strong. Aside from the identification evidence by Davis and Reed, Petitioner was also identified by a neighbor as the assailant, both in a lineup and in court. Petitioner does not argue that this identification was flawed. In addition, Petitioner was connected to the crime scene by his wife's van and the surveillance video from the gas station showing the shooter. (*See* Doc. No. 1-1 at 11.) Therefore, the trial court's limit on cross-examination did not substantially influence the jury's verdict.

### 2. Ineffective Assistance of Counsel

To succeed on his ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient, and that the deficient performance caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and Petitioner must demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been

12

different." *Id.* at 694. Judicial review of the state court's resolution of this claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The question is not "whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id*.

Petitioner argues that his trial counsel was ineffective for failing to make a complete offer of proof regarding the prior home invasion evidence. The Minnesota Court of Appeals rejected this argument because Petitioner conceded that the proffered evidence did not meet the alternative-perpetrator threshold, and as a result, there was not a reasonable probability that the failure to make an offer of proof affected the outcome of the proceedings. *Tate*, 2016 WL 952444, at *3. It was not deficient performance for trial counsel to refrain from a fuller offer of proof when it was conceded that the evidence did not meet the threshold for the admission of alternative perpetrator evidence in the first instance. Petitioner also cannot meet the prejudice prong in light of the other identification evidence presented at trial. In sum, Petitioner cannot meet either *Strickland* prong, and the court of appeals reasonably applied the *Strickland* standard to Petitioner's claim.

### 3. Evidence to Support Conviction for Assaulting J.B.

Due process requires that no person be convicted of a crime "except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a

reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). When reviewing the sufficiency of the evidence, courts must view the evidence in the light most favorable to the prosecution. *Id.* at 319. Evidence is sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* As the Supreme Court has explained, *Jackson* claims

> face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Petitioner argues that there was insufficient evidence to support his conviction for assaulting J.B. Specifically, Petitioner was convicted of first-degree assault, which requires proof that the defendant assaulted another person and inflicted "great bodily harm." Minn. Stat. § 609.221, subd. 1 (2012). "Great bodily harm" is defined as "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn. Stat. § 609.02, subd. 8 (2012). The evidence presented at trial indicated that J.B. suffered a fractured tibia, which required surgery and a splint to stabilize the bone. *Tate*, 2016 WL

952444, at *4. He was unable to walk and was confined to a wheelchair during the summer months. *Id.* At the time of trial, almost nine months after the shooting, J.B.'s leg was still crooked, and Davis testified that if J.B. did not grow into the crooked leg, he would require additional surgery. *Id.* Based on these facts, a rational juror could have concluded that J.B. suffered a "protracted loss or impairment" of the function of his leg, and as a result, found Petitioner guilty of first-degree assault. Petitioner's conviction was supported by sufficient proof, and there was no due process violation.[3]

### 4. Prosecutorial Misconduct

Comments by a prosecutor at trial will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)). It "is not enough that the prosecutor's remarks were undesirable or even universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. To prove prosecutorial misconduct, a defendant must demonstrate (1) that the prosecutor's comments were improper, and (2) that the comments prejudicially affected the defendant's substantial rights such that he was denied a fair trial. *United States v. Londondio*, 420 F.3d 777, 787 (8th Cir. 2005). At

---

[3] Petitioner argues that J.B.'s leg fracture is not great bodily harm because it falls under the definition of "substantial bodily harm." Minn. Stat. § 609.02, subd. 7a (2012) (stating that "substantial bodily harm" includes bodily injury "which causes a fracture of any bodily member"). As the court of appeals explained, however, the "fact that a fracture may constitute substantial bodily harm does not preclude a particular fracture from meeting the definition of 'great bodily harm.'" *Tate*, 2016 WL 952444, at *4.

the second step, courts consider the cumulative effect of the misconduct, the strength of the properly admitted evidence of the defendant's guilt, and any curative actions taken by the trial court. *Id.* On habeas review, moreover, *Brecht*'s "substantial and injurious" standard applies to determine if the alleged misconduct was prejudicial. *See, e.g.*, *Davis v. Grandlienard*, Civil No. 13–2449 (DSD/JJK), 2015 WL 1522186, at *28 (D. Minn. Mar. 31, 2015) ("Prosecutorial misconduct which rises to the level of a due process violation may provide the grounds for granting a habeas petition only if that misconduct is deemed prejudicial under the 'harmless error' test articulated in *Brecht*.") (citing *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004)).

Petitioner argues that the prosecutor improperly aligned herself with the jury by stating that Davis and Reed were "from a different world." *Tate*, 2016 WL 952444, at *6.[4] The Minnesota Court of Appeals explained that while it is "improper for a prosecutor to make reference to a different world or environment to distinguish the defendant's racial or socioeconomic status from those of the jurors," that type of

---

[4]   The prosecutor stated as follows during closing argument:

> We may not quite understand the world that Annie Davis lives in, the world that Darnell Reed lives in, where you wouldn't help the cops right away in an investigation so serious and important. It might not be something that any of us here can grasp.
>
> But you can understand, and what is clear to everybody is a mother's rage, a mother's grief. A mother's fear about the revenge that had been exacted on her and her family for what she viewed as a fight. Again, we're not in that world.

(Resp't's App. 800.)

misconduct was not at issue because the "prosecutor's arguments did not point out differences between the jury and Tate; they focused on witnesses [Davis and Reed]." *Id.* The reference was "offered to explain why [Davis and Reed] did not initially cooperate with law enforcement and identify Tate as the shooter. The state's case relied heavily on the credibility of these witnesses. . . . By referencing a world where police are mistrusted, the prosecutor sought to bolster the credibility of [Davis and Reed] by explaining why their statements to law enforcement evolved during the investigation." *Id.*

This Court need not decide whether these remarks were improper. As stated above, the evidence in support of Defendant's conviction was compelling. As a result, the Court does not have "grave doubt" about the effect of the alleged error on the jury's verdict. *Chang*, 521 F.3d at 832.

### C.     Certificate of Appealability

This Court notes that a § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A COA should not be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jurists of reason would not debate that Petitioner's claims should have been resolved differently, or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Therefore, this Court recommends that a COA should not be issued.

### III.  Recommendation

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

2. Petitioner's request for a certificate of appealability be **DENIED**; and

3. This action be **DISMISSED WITH PREJUDICE**.


Date: April 19, 2018.                    *s/ Becky R. Thorson*_____
                                         BECKY R. THORSON
                                         United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).